Gerald LONGA, M.D. and Frank L. Spendal, M.D., Appellants–Defendants,

v.

Susan VICORY, et al, Malcolm Aukerman, Mildred Genisio, Roger Griffin, and James Huxford, Appellees–Plaintiffs.

No. 83A01–0406–CV–233.

Court of Appeals of Indiana.

June 7, 2005.

L. Alan Whaley, Ice Miller, Indianapolis, for Appellants.

Eric A. Frey, John P. Nichols, Anderson Frey & Nichols, Stephen L. Williams, Mann Law Firm, Terre Haute, for Appellees.

## OPINION

BAKER, J.

Appellants-defendants Dr. Gerald Longa and Dr. Frank L. Spendal bring this interlocutory appeal of a certified question from the Vermillion Circuit Court. The question that is certified for our review is: does Indiana Code section 16–21–2–7 impose general peer review and quality assurance responsibility on each individual member of a hospital's medical staff? Finding that there is no private right of action and that the doctors owed no duty to Vicory under Indiana Code section 16–21–2–7, we reverse the judgment of the trial court and remand with instructions to enter summary judgment in favor of Drs. Longa and Spendal.[1]

## FACTS

This action arises from the deaths of the plaintiffs' (Vicory's) decedents at Vermil-

1. We heard oral argument on this case on May 18, 2005, in Indianapolis. We commend counsel for their able presentations and appellate briefs.

lion County Hospital (Hospital) on dates ranging from April 6, 1993, to March 2, 1995. A nurse at the Hospital's Intensive Care Unit, Orville Lynn Majors, came under suspicion regarding these deaths, and he was eventually convicted of murdering six patients. *Majors v. State*, 773 N.E.2d 231 (Ind.2002).

·Approximately sixty-three families filed Proposed Complaints with the Indiana Department of Insurance, alleging in part that members of the Hospital's medical staff had committed medical malpractice for failing to provide proper peer review. The Proposed Complaints also seek damages from Majors, the Board and Administrator of the Hospital, the Commissioners of Vermillion County, and several physicians practicing at the hospital, including Drs. Longa and Spendal. Although Drs. Longa and Spendal were members of the Hospital's medical staff during this time period, neither of them treated any of the patients whose deaths were at issue in the Proposed Complaints. According to their affidavits, neither Dr. Longa nor Dr. Spendal had any principal-agent or employer-employee relationship with any of the health care providers who had treated the patients, including Majors. Appellant's App. p. 49–52.

The Service of Medicine Committee (Committee) at the Hospital is responsible for peer review and for monitoring admissions, discharges and patient deaths. Its primary responsibility is to monitor the level of medical care being given at the Hospital and to ensure that it is adequate. Neither Dr. Longa nor Dr. Spendal has ever been a member of the Committee.

On January 21, 2000, Drs. Longa and Spendal filed a Motion for Preliminary Determination of Law and Motion to Dismiss or for Summary Judgment in the Vermillion Circuit Court. The doctors requested a grant of summary judgment on four of Vicory's claims: respondeat superior, claims based on the assumption that Drs. Longa and Spendal were treating physicians, res ipsa loquitor, and the claim that Drs. Longa and Spendal failed to provide proper peer review. After holding the motion in abeyance while the parties attempted mediation—which ultimately failed—in April 2003, Drs. Longa and Spendal requested a ruling on their motion, and the trial court held a hearing on July 11, 2003. On March 31, 2004, the trial court granted the motion as to the respondeat superior, negligent treatment, and res ipsa loquitor theories. However, the trial court denied the motion as to whether Drs. Longa and Spendal had peer review responsibility at the Hospital during the time at issue.

On April 29, 2004, the doctors filed a Motion to Certify Question for Interlocutory Appeal. The trial court granted the motion and certified the question the next day. On June 21, 2004, we accepted jurisdiction over this appeal.

## DISCUSSION AND DECISION

■ The sole issue presented for our review is whether Indiana Code section 16–21–2–7 imposes general peer review and quality assurance responsibility on each individual member of a hospital's medical staff. The doctors contend that Vicory's interpretation of the statute is flawed for several reasons, and they assert that the term "medical staff" as used in the statute means the medical staff as a group and that the medical staff's peer review responsibilities may be carried out through committees.

■ The interpretation of a statute presents a pure question of law for which disposition by summary judgment is particularly appropriate. *State Auto Ins. Cos. v. Shannon*, 769 N.E.2d 228, 231 (Ind.Ct.

App.2002). On appeal from the denial of a motion for summary judgment, we apply the same standard as the trial court. Where, as here, the issue is a pure question of law, we review the case de novo, and no deference is given to the trial court's judgment. *Bader v. Johnson*, 732 N.E.2d 1212, 1216 (Ind.2000). Summary judgment is appropriate only if the designated evidence shows that there is no genuine issue of material fact and that a party is entitled to judgment as a matter of law. Indiana Trial Rule 56(C).

When construing a statute, we give effect to the legislature's intent in enacting the provision. *Ind. Civil Rights Comm'n v. Alder*, 714 N.E.2d 632, 637 (Ind.1999). Words used in a statute should be given their common and ordinary meanings. *Id.* The statute is examined as a whole, and it is often necessary to avoid excessive reliance on a strict literal meaning or the selective reading of individual words. *Ind. Civil Rights Comm'n v. County Line Park*, 738 N.E.2d 1044, 1048 (Ind.2000). The legislature is presumed to have intended the language used in the statute to be applied logically and not to bring about an absurd or unjust result. *Id.*

Indiana Code section 16–21–2–7 provides:

The medical staff of a hospital is responsible to the governing board for the following:

(1) The clinical and scientific work of the hospital.

(2) Advice regarding professional matters and policies.

(3) Review of the professional practices in the hospital for the purpose of reducing morbidity and mortality and for the improvement of the care of patients in the hospital, including the following:

(A) The quality and necessity of care provided.

(B) The preventability of complications and deaths occurring in the hospital.

The members of a medical staff committee who conduct a retrospective medical review have absolute immunity from civil liability for communications made in committee meetings and reports and recommendations made by the committee arising from deliberations by the committee to the governing board of the hospital or another duly authorized medical staff committee. I.C. § 16–21–2–8.

Only two cases have interpreted Indiana Code section 16–21–2–7. In *Winona Mem'l Hosp. v. Kuester*, 737 N.E.2d 824 (Ind.Ct.App.2000), a panel of this court was asked to decide whether the Indiana Malpractice Act encompassed a claim for negligent credentialing. *Kuester* did not address whether individual doctors who were not members of the credentialing committee could be responsible for the committee's decision. This court found that a claim for negligent credentialing of a physician is an action for malpractice subject to the requirements of the Malpractice Act. *Id.* at 828.

*Roberts v. Sankey*, 813 N.E.2d 1195 (Ind.Ct.App.2004), *trans. denied*, arose out of the same set of facts as the present case. The defendant, Dr. Sankey, was a member of the Hospital staff but had not treated the decedent, Nell Roberts. On appeal, Roberts argued that Indiana Code section 16–21–2–7 created a duty from Dr. Sankey to Nell to review the professional practices at the Hospital even in the absence of a physician-patient relationship, citing *Kuester* for that proposition. The *Roberts* court found that Indiana Code section 16–21–2–7 does not create a private right of action, and this court further rejected Roberts's argument regarding *Kuester*. "In *Kuester*, the court did not create a duty from a physician to a patient

under Indiana Code § 16–21–2–7." *Kuester*, 737 N.E.2d at 826.

Vicory conceded at oral argument that there is no private right of action under Indiana Code section 16–21–2–7, but asserted that this does not close the door on the present case because the trial court found that the doctors had a non-delegable duty to provide peer review. But we note that Indiana Code section 16–21–2–7 makes the medical staff responsible for peer review to the governing board, not to patients or to the general public. While it is true that the public is a beneficiary of this duty, inasmuch as the general public health is protected by peer review, the plain language of the statute creates no duty from a physician to a patient in this context. *See also Kuester*, 737 N.E.2d at 826. Moreover, members of the peer review committee are immune from liability under Indiana Code section 16–21–2–8. It makes no sense that the individuals who are responsible for peer review would be immune from suit while those doctors who are not members of the Committee could be sued for the actions or failures of the Committee.

Were we to decide otherwise, placing individual responsibility for peer review on each and every doctor in a hospital, we would reach an absurd result. Each individual physician on a hospital's medical staff would be liable for any failure by any of the hospital's committees. In essence, any doctor with a hospital practice could be responsible for virtually any quality-related issue that arose in the hospital. Such as result is completely impractical, especially in larger hospitals that have hundreds of doctors on their medical staff.

We wish to make it clear that we do not condone a hospital's lack of attention to a pattern of suspicious deaths. These tragic events underscore the importance of peer review and review of death charts in hospitals. The plaintiffs here are not without a cause of action or a potential recovery for their injuries, but Drs. Longa and Spendal are not responsible for the alleged failures of the Committee.

The judgment of the trial court is reversed and remanded with instructions to enter summary judgment in favor of Drs. Longa and Spendal.

KIRSCH, C.J., and BARNES, J., concur.